**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

JAMES VAN CONNOR, individually
and on behalf of a class of all persons and
entities similarly situated,

        Plaintiff,

vs.                                                                                    Case No.

FORESTERS FINANCIAL SERVICES, INC.
and ONE LIFE AMERICA, INC.

        Defendants.

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiff James Van Connor brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. Mr. Connor alleges that Defendant One Life America, Inc., itself or through a vendor, sent him a pre-recorded telemarketing call for purposes of promoting Foresters Financial Services, Inc. ("Foresters") goods and services without prior express written consent.

3. Because these calls were transmitted using technology capable of generating thousands of similar calls per day, he sues on behalf of a proposed nationwide class of other persons who received similar calls.

4. A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

5.       Plaintiff James Van Connor resides in Greenville County, South Carolina.

6.       Defendant Foresters Financial Services, Inc. is a New York corporation that is registered to do business in this District with a registered agent of US Corporation Company, 1703 Laurel St., Columbia, SC 29201. Foresters offers financial service products in this District as it attempted to do with Mr. Connor.

7.       Defendant One Life America, Inc. is a Mississippi corporation that is registered to do business in this District with a registered agent of CT Corporation System, 75 Beattie Place, Greenville, SC 29601. One Life offers Foresters financial service products in this District as it attempted to do with Mr. Connor.

**Jurisdiction & Venue**

8.       The Court has federal question jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq.*

9.       Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim—namely, the automated calls to the Plaintiff Connor—occurred in this District.

**Statutory Background**

<u>THE TCPA</u>

10.      In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

11.      The TCPA makes it unlawful to (1) make calls to cellular telephone lines using an

"automatic telephone dialing system," or (2) make calls to any cellular or residential line using an artificial or prerecorded voice, without the call recipient's prior express consent. *See* 47 U.S.C. § 227(b)(1)(A) & (B); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012).

12.     These calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

13.     Because allowing an entity "to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions," the FCC has consistently held that a corporation or other entity "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

THE GROWING PROBLEM OF AUTOMATED TELEMARKETING

14.     When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

15.     By 2003, telemarketers were calling 104 million Americans every day, abetted by the proliferation of new and more powerful autodialing technology. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

16.     Unfortunately, the problems Congress identified when it enacted the TCPA have only grown worse in recent years.

3

17. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

18. According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 at a rate of 168.8 million per day. www.robocallindex.com (last visited November 18, 2019). YouMail estimates that in 2019 robocall totals will exceed 60 billion. *See id.*

19. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

## Factual Allegations

20. Mr. Connor's number, 864-834-XXXX, is assigned to a cellular telephone service.

21. On July 23, 2019, One Life called Mr. Connor on his number 864-834-XXXX.

22. A pre-recorded message was then played regarding insurance services.

23. The individual was not identified at the outset of the call.

24. To learn the identity of the company calling him, Mr. Connor engaged the telemarketer and confirmed their information.

25. Mr. Connor was contacted by Dan Shear, an employee for One Life and agent of Foresters.

26. Confirming that Mr. Shear was promoting Foresters goods and services, Mr. Shear provided Mr. Connor an application for individual life insurance for Foresters.

27. The application was a form from Foresters that included its name, address, trademark, telephone, fax number and website.

28. The application also had form terms and conditions from Foresters.

29. Mr. Connor and others who received these calls were temporarily deprived of legitimate use of their phones and their privacy was invaded.

### **Forester's Liability**

30. One Life is a "person," as defined by 47 U.S.C. § 153(39).

31. Foresters is a "person," as defined by 47 U.S.C. § 153(39).

32. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

33. In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

34. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Foresters may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent'

>marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

35. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

36. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n. 107.

37. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

>[A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd at 6592 (¶ 46).

38. Foresters is legally responsible for ensuring that One Life complied with the TCPA, even if Foresters did not themselves make the calls.

6

39. Foresters knowingly and actively accepted business that originated through the illegal telemarketing calls from One Life.

40. By hiring a company to make calls on their behalf, Foresters "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

41. Similarly, by accepting these leads, One Life "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of Foresters as described in the Restatement (Third) of Agency. As such, One Life is an agent for Foresters.

42. Moreover, Foresters maintained interim control over One Life's actions.

43. For example, Foresters had absolute control over whether, and under what circumstances, they could issue an insurance quote and/or policy to a prospective customer.

44. Foresters also gave interim instructions to One Life by providing (1) geographic parameters for potential customers that One Life could telemarket to and (2) the volume of calling and leads they would purchase.

45. One Life also has the ability to bind Foresters in contract, a hallmark of an agency relationship.

46. As a result, Foresters not only controlled the result of the work, but also the means by which it was accomplished through interim instructions.

47. Foresters also ratified the conduct of One Life by accepting the benefits of the telemarketing conduct even though they were aware that One Life was making the telemarketing calls at issue for Foresters.

**Class Action Allegations**

48. As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff sues on behalf of other persons or entities throughout the United States.

49. The proposed class is tentatively defined as:

All persons within the United States to whom, within the four years prior to the filing of this action, Defendants, or someone on their behalf, placed a call to his or her cellular telephone line, using the same or similar recorded message used to call the Plaintiff.

50. The Plaintiff is a member of the class.

51. Excluded from the class are the Defendants, any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

52. Class members are identifiable through phone records and phone number databases that will be obtained through discovery.

53. Based on the automated nature of telemarketing campaigns, there are likely thousands of class members. Individual joinder of these persons is impracticable.

54. There are questions of law and fact common to Plaintiffs and the proposed class, including:

   a. Whether the Defendants used a pre-recorded message to send telemarketing calls;

   b. Whether the Defendants placed telemarketing calls without obtaining the recipients' valid prior express written consent;

   c. Whether the Defendants' TCPA violations were negligent, willful, or knowing; and

        d.      Whether the Plaintiff and the class members are entitled to statutory damages because of the Defendants' actions.

55. Plaintiff's claims are based on the same facts and legal theories as class members, and therefore are typical of the class members' claims.

56. Plaintiff is an adequate representative of the class because his interests do not conflict with the class' interest, he will fairly and adequately protect the class' interests, and he is represented by counsel skilled and experienced in litigating TCPA class actions.

57. The Defendants' actions are applicable to the class and to Plaintiff.

58. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records and databases maintained by Defendants and others.

59. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

60. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA's provisions
### prohibiting pre-recorded message calls to cell phones

61. The Defendant violated the TCPA by (a) initiating a telemarketing call using an prerecorded voice to Plaintiff's telephone number assigned to a cellular telephone service

without prior express written consent, or (b) by the fact that others caused the initiation of those calls on its behalf.  *See* 47 C.F.R. 64.1200(a)(1)(iii); 47 U.S.C. § 227(b)(1).

62. The Defendants' violations were willful or knowing.

63. The TCPA also permits injunctive relief, which the Plaintiff and the putative class seek by prohibiting the Defendants from using a pre-recorded message, absent an emergency circumstance.

.

### Relief Sought

Plaintiff requests the following relief:

A. That the Court certify the proposed class;

B. That the Court appoint Plaintiff as class representative;

E. That the Court appoint the undersigned counsel as counsel for the class;

F. That the Court enter a judgment permanently enjoining the Defendants from using a pre-recorded message, absent an emergency circumstance.

G. That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

H. That the Plaintiffs and all class members be granted other relief as is just and equitable under the circumstances.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**


DAVE MAXFIELD, ATTORNEY, LLC


By:  \_s/ Dave Maxfield_____
       David A. Maxfield, Fed. ID 6293
       P.O. Box 11865

                                                    Columbia, SC 29211
                                                  803-509-6800
                                                  855-299-1656 (fax)
                                                  dave@consumerlawsc.com

Dated: November 20, 2019