IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| JAMES VAN CONNOR, individually and on behalf of a class of all persons and entities similarly situated,<br><br><br><br><br>v.<br><br>INDEPENDENT ORDER OF FORESTERS, ONE LIFE AMERICA, INC., NICHE MARKET INSURERS AGENCY, INC., and MARK ADAMS,<br><br>Defendants. | Civil Action No. 6:19-cv-03283-DCC<br><br><br>**UNITED STATES OF AMERICA'S BRIEF IN DEFENSE OF THE CONSTITUTIONALITY OF THE TELEPHONE CONSUMER PROTECTION ACT OF 1991** |

## INTRODUCTION

Since 1991, the Telephone Consumer Protection Act ("TCPA") has prohibited the use of certain automated technologies in making calls to cell phones absent the consent of the person being called. *See* 47 U.S.C. § 227(b)(1)(A)(iii) (the "robocall restriction"). There is no dispute that the robocall restriction was valid when enacted. In a 2015 amendment, Congress added an exception to the statute to allow the use of these automated technologies for calls made to collect debts owed to or guaranteed by the United States without the consent of the person being called (the "government-debt exception"). Last year, in *Barr v. American Association of Political Consultants* (*AAPC*), 140 S. Ct. 2335 (2020), the Supreme Court held that the government-debt exception is content based and severed the exception from the remainder of the statute. Thus, in light of *AAPC*, there is also no dispute that a call or text made today in violation of the robocall restriction would subject a robocaller to liability. *See id.* at 2353 (plurality op.) ("With the government-debt exception severed, the remainder of the law is capable of functioning independently and thus would be fully operative as a law.").

1

Nonetheless, the Independent Order of Foresters ("IOF"), One Life America, Inc., and Mr. Mark Adams (collectively "Defendants") argue that it would be unconstitutional to apply the robocall restriction to the calls at issue in this case because they were made after the government-debt exception was enacted but before the Court's decision in *AAPC*. According to Defendants, this time period (roughly 2015-2020) amounted to a regulatory donut hole in which the TCPA cannot constitutionally be enforced against any robocaller because of the presence of the government-debt exception, even though there is no dispute that the robocall restriction was fully constitutional before and after that time period.

This result was squarely rejected in the *AAPC* plurality opinion, in which three Justices confirmed that the Court's decision holding the government-debt exception invalid "does not negate the liability of parties who made robocalls" prior to the Court's decision, *id.* at 2355 n.12, and neither of the opinions concurring in the judgment with respect to severability disputed that conclusion, *see id.* at 2357 (Sotomayor, J.); *id.* at 2363 (Breyer, J.). And although a handful of district courts have ignored that clear direction and held that calls and texts made before the government-debt exception's severance are immune from the TCPA, a large majority of district courts have rejected Defendants' argument that the robocall restriction was unenforceable for this five-year period.

Defendants' argument should also be rejected by this Court because it runs counter to the rule that "an unconstitutional statutory amendment 'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." *AAPC*, 140 S. Ct. at 2353 (plurality op.) (quoting *Frost v. Corp. Comm'n of Okla.*, 278 U.S. 515, 526-27 (1929)). In circumstances like these, in which the pertinent statute was valid as originally enacted, an unconstitutional amendment is "powerless to work any change in the existing statute," and the original "statute must stand as the only valid expression of the legislative intent." *Frost*, 278 U.S. at 526-27. Based on that rule, the Supreme Court has allowed a finding of liability under statutes that were valid when enacted but to which invalid amendments had been promulgated before the time of the alleged violation.

## BACKGROUND

### I.  Statutory Background and the *AAPC* Decision

"Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-72 (2012); *see* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5)-(6), 105 Stat. 2394, 2394. As pertinent here, the TCPA's robocall restriction makes it unlawful:

> To make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service[.]

47 U.S.C. § 227(b)(1)(A)(iii). That provision has long been interpreted to apply to both phone calls and text messages. *See In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 (2003).

In 2015, Congress amended the TCPA to provide that the robocall restriction does not apply to calls made solely to collect a debt owed to or guaranteed by the United States (the "government-debt exception"). *See* Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301(a)(1), 129 Stat. 584, 588. The Communications Act of 1934 contains a severability provision (covering the TCPA), which states that "[i]f any provision of this chapter . . . is held invalid, the remainder . . . shall not be affected." 47 U.S.C. § 608.

In July 2020, the Supreme Court held in *AAPC* that the government-debt exception was content-based and violated the First Amendment. 140 S. Ct. at 2352 (plurality op.); *id.* at 2364 (Gorsuch, J.) (concurring as to that conclusion). However, the Court rejected the argument that the presence of the government-debt exception meant that the overall restriction on robocalls should be invalidated. *See id.* at 2348-49 (plurality op.); *id.* at 2362 (Breyer, J.) (concurring in judgment in part and dissenting in part) (agreeing that "the government-debt exception provides no basis for undermining the

3

general cell phone robocall restriction"). The Court further held that the government-debt exception was severable, and thus "the correct result in this case is to sever the . . . exception and leave in place the longstanding robocall restriction." *Id.* at 2355 (plurality op.); *see also id.* at 2357 (Sotomayor, J.) (concurring in judgment); *id.* at 2363 (Breyer J.) (concurring in judgment with respect to severability and dissenting in part). As the plurality explained, "an unconstitutional statutory amendment 'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." *Id.* at 2353 (quoting *Frost*, 278 U.S. at 526-27).

The plurality opinion contained a footnote in which three Justices discussed the effect that severing the government-debt exception would have on parties' liability for prior violations of the robocall restriction. The opinion explained that "although our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court . . . or such date that the lower courts determine is appropriate." *Id.* at 2355 n.12. However, the plurality continued by flatly stating that "[o]n the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." *Id.* Neither of the separate opinions concurring with respect to severability questioned that conclusion. *See id.* at 2357 (Sotomayor, J.) (concurring in judgment); *id.* at 2363 (Breyer, J.).

## II.     Judicial Decisions After *AAPC*

Subsequent to the Supreme Court's decision in *AAPC*, several defendants moved to dismiss complaints that sought enforcement of the TCPA against calls and text messages made after the government-debt exception was added but before *AAPC* was decided. To date, four district courts have agreed with this argument and dismissed TCPA complaints to the extent they sought damages for calls and texts made during this time period. *See Creasy v. Charter Commc'ns, Inc.*, 489 F. Supp. 3d 499 (E.D. La. 2020); *Lindenbaum v. Realgy, LLC*, No. 1:19-cv-2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020); *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, 5:20-cv-38, 2020 WL

7346536 (M.D. Fla. Dec. 11, 2020); *Cunningham v. Matrix Fin. Servs., LLC*, 4:19-cv-896, 2021 WL 1226618 (E.D. Tex. Mar. 31, 2021).[1] However, the large majority of district courts have rejected the argument that robocallers can avoid liability for robocalls made before the government-debt exception's severance.[2] Indeed, the same district court judge who dismissed the TCPA complaint in *Hussain* has more recently denied a defendant's request seeking to dismiss a TCPA complaint on identical grounds. *See Boisvert v. Carnival Corp.*, 8:20-cv-2076, 2021 U.S. Dist. LEXIS 47397, at *4 (M.D. Fla. Mar. 12, 2021) ("Upon further reflection, the Court departs from its earlier opinion because, since the Court's Order in *Hussain*, every court faced with this same issue has concluded that a plaintiff may continue to bring § 227(b) claims post-*AAPC*.").

### III.    Procedural Background

The operative complaint asserts violations of 47 U.S.C. § 227(b)(1)(A)(iii). ECF No. 41. Defendant IOF filed a motion to dismiss on January 13, 2021, arguing that the complaint should be

---

[1] Defendants in these cases did not timely notify the government of their constitutional challenges and the United States accordingly had no opportunity to intervene in the district courts. The *Lindenbaum* decision has been appealed, and the United States has intervened in the Sixth Circuit and filed a brief arguing that the decision below is incorrect.

[2] *See Abramson v. Fed. Ins. Co.*, 8:19-cv-2523, 2020 WL 7318953 (M.D. Fla. Dec. 11, 2020); *Shen v. Tricolor Cal. Auto Grp., LLC*, 20-cv-7419, 2020 WL 7705888 (C.D. Cal. Dec. 17, 2020); *Trujillo v. Free Energy Sav. Co.*, 5:19-cv-2072, 2020 WL 8184336 (C.D. Cal. Dec. 21, 2020); *Rieker v. Nat'l Car Cure, LLC*, 3:20-cv-5901, 2021 WL 210841 (N.D. Fla. Jan. 5, 2021); *Stoutt v. Travis Credit Union*, 2:20-cv-1280, 2021 WL 99636, (E.D. Cal. Jan. 12, 2021), *granting mot. to certify appeal*, 2021 WL 1143612 (Mar. 25, 2021); *Bonkuri v. Grand Caribbean Cruises, Inc.*, 20-cv-60638, 2021 WL 612212 (S.D. Fla. Jan. 19, 2021); *Less v. Quest Diagnostics, Inc.*, 3:20-cv-2546, 2021 WL 266548 (N.D. Ohio Jan. 26, 2021); *McCurley v. Royal Sea Cruises, Inc.*, 17-cv-986, 2021 WL 288164 (S.D. Cal. Jan. 28, 2021); *Distasio v. Edible Arrangements, LLC*, 3:16-cv-538, 2021 WL 1087499 (D. Conn. Feb. 1, 2021); *Massaro v. Beyond Meat, Inc.*, 3:20-cv-510, 2021 WL 948805 (S.D. Cal. Mar. 12, 2019); *Miles v. Medicredit, Inc.*, 4:20-cv-1186, 2021 WL 1060105 (E.D. Mo. Mar. 18, 2021); *Whittaker v. WinRed Tech. Servs., LLC*, 20-cv-8150, 2021 WL 1102297 (D. Ariz. Mar. 23, 2021); *Moody v. Synchrony Bank*, 5:20-cv-61, 2021 WL 1153036 (M.D. Ga. Mar. 26, 2021); *Hossfeld v. Am. Fin. Sec. Life Ins. Co.*, 19-cv-60597, 2021 WL 1186526 (S.D. Fla. Mar. 29, 2021); *Franklin v. Navient, Inc.*, 1:17-cv-1640, 2021 WL 1535575 (D. Del. Apr. 19, 2021); *Gunn v. Prospects DM, LLC*, 4:19-cv-3129, 2021 WL 1534234 (E.D. Mo. Apr. 19, 2021); *Valdes v. Nationwide Real Estate Execs., Inc.*, 8:20-cv-1734, Dkt. 35 (C.D. Cal. Apr. 22, 2021); *Mey v. Medguard Alert, Inc.*, 5:19-cv-315, 2021 WL 1652945 (N.D.W. Va. Apr. 27, 2021); *Mich. Urgent Care & Primary Care Physicians, P.C. v. Med. Sec. Card Co.*, 2:20-cv-10353, 2021 WL 1663619 (E.D. Mich. Apr. 28, 2021).

dismissed because (according to Defendant) *AAPC* rendered the robocall restriction unconstitutional during the time period in which Plaintiff was allegedly called. ECF No. 104-1 ("Def. Br."). Defendant One Life America, Inc. and Defendant Mark Adams subsequently filed additional motions to dismiss, which adopted the arguments contained in Defendant IOF's brief and did not add any meaningfully new arguments.[3] *See* ECF Nos. 106-1, 109-1. Each defendant filed a notice of constitutional challenge pursuant to Federal Rule of Civil Procedure 5.1. ECF Nos. 105, 107, 110.

The government moved for two extensions of time to determine whether to intervene to defend the constitutionality of the TCPA. ECF Nos. 127, 135. The Court granted the government's motions, setting the deadline to intervene as May 19, 2021. ECF No. 129, 136.

## ARGUMENT

### I.     Defendants May Be Liable Under Section 227(b)(1)(A)(iii) for Calls Made Before the Supreme Court's Decision in *AAPC*

In holding that the government-debt exception was unconstitutional and severable from the remainder of the TCPA, the Supreme Court in *AAPC* affirmed the validity of the TCPA's prohibition on making robocalls to cell phones without the consent of the person being called. *See* 140 S. Ct. at 2349, 2353 (plurality op.). The plurality further explained that the Court's opinion "does not negate the liability of parties who made robocalls" prior to the Court's decision. *Id.* at 2355 n.12. Therefore, the Court should hold (consistent with *AAPC*) that Defendants may be held liable for violations of the robocall restriction that occurred after the enactment of the government-debt exception and prior to the Supreme Court's decision in *AAPC*.

### A.    Since The Government-Debt Exception Is Unconstitutional, It Has No Effect on Section 227(b)(1)(A)(iii), Which Has Been Fully Operative at All Relevant Times

There is no dispute that the robocall restriction was valid before the enactment of the government-debt exception and that it is likewise valid and enforceable today. Defendants urge, however, that the robocall restriction was rendered unenforceable for the period of time between the enactment

---

[3] For this reason, the government does not separately discuss these motions to dismiss. All arguments contained herein apply equally to the motions brought by these other defendants.

of the government-debt exception and the Court's determination in *AAPC* that the exception is severable. *See* Def. Br. at 5-10.

That view cannot be squared with *AAPC* and the Supreme Court's prior decisions concerning the effect of invalid amendments to constitutional statutes. The Supreme Court has long made clear that an unconstitutional amendment is "powerless to work any change in the existing statute," and that the original "statute must stand as the only valid expression of the legislative intent." *Frost*, 278 U.S. at 526-27. Thus, the validity of a provision "c[an] not be impaired by the subsequent adoption of what were in form amendments, but, in legal effect, were mere nullities." *Eberle v. Michigan*, 232 U.S. 700, 705 (1914).

Citing those principles, *AAPC* confirmed the continuing validity of the robocall restriction, explaining that "an unconstitutional statutory amendment" like the government-debt exception "'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." 140 S. Ct. at 2353 (plurality op.) (quoting *Frost*, 278 U.S. at 526-27). *AAPC* further concluded that the impermissibly content-based government-debt amendment was severable from the remainder of the statute, *see id.* at 2349; *id.* at 2357 (Sotomayor, J.) (concurring in judgment); *id.* at 2363 (Breyer, J.) (concurring in judgment with respect to severability and dissenting in part), and that its enactment did not have any effect on the concededly valid restrictions already in effect, *id.* at 2348-49 (plurality op.) (rejecting the suggestion that the amendment "betray[ed] a newfound lack of genuine congressional concern for consumer privacy" that called the robocall restriction into doubt).

Prior Supreme Court decisions applying those principles confirm that a defendant may be liable for violating a provision notwithstanding the enactment of an unconstitutional amendment. In *Eberle*, the Court affirmed the petitioner's conviction under a Michigan law prohibiting the manufacture of alcohol even though amendments to the law enacted prior to the alleged violation were inconsistent with principles of equal protection. 232 U.S. at 706. The Court explained that the original "statute had been held to be constitutional, and prohibited, without discrimination, the manufacture of all liquors. That valid act the defendants violated, and their conviction cannot be set aside" based on the enactment of unconstitutional amendments to the rule. *Id.* Likewise, in *United States v.*

*Jackson*, 390 U.S. 570, 591 (1968), the Court held that the defendants could be tried under the Federal Kidnapping Act for alleged violations of its original terms, which prohibited the interstate transport of kidnapped individuals, notwithstanding the unconstitutionality of an amendment that conditioned the possibility of capital punishment on the exercise of the right to trial by jury. In holding the capital punishment clause invalid and severable from the remainder of the statute, *id.* at 583, 586, the Court confirmed that "the unconstitutionality of that clause does not require the defeat of the law as a whole," *id.* at 586. And the Court held that, notwithstanding the unconstitutional amendment, "[t]he appellees may be prosecuted for violating" the original terms of the Act. *Id.* at 591.

Defendants' position cannot be reconciled with the holdings in *Eberle* and *Jackson*. In each case, the defendant allegedly violated a law that was constitutional as originally enacted. *See AAPC*, 140 S. Ct. at 2353. And in each case, the violation of the original provision occurred after the legislature had enacted an amendment that was later held to be invalid and severable from the statute. Thus, the principles that provided for liability in *Eberle* and *Jackson* likewise allow that result here.

Defendants' argument is also at odds with longstanding principles of judicial review insofar as Defendants suggest that the *AAPC* decision altered the law. *See, e.g.*, ECF No. 117 ("Def. Reply"), at 7.[4] When the "Court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law," and it is therefore "not accurate to say that the Court's decision . . . 'changed' the law that previously prevailed." *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 313 n.12 (1994). An interpretation of a statute in a judicial opinion is a statement of "what the law *is*," not "what it is today *changed to*, or what it will *tomorrow* be." *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 549 (1991) (Scalia, J., concurring in judgment). Accordingly, when the Supreme Court holds that part of a statute is inconsistent with the Constitution, it is holding that the provision was unconstitutional from the outset, not that it is newly invalid upon the entry of final judgment. *See Chicago, I. & L. Ry. Co. v. Hackett*, 228 U.S. 559, 566 (1913) ("Th[e] act was therefore as inoperative as if it had never been passed, for an unconstitutional act is not a

---

[4] Defendant One Life America, Inc. and Defendant Mark Adams filed reply briefs that adopted the arguments contained in IOF's brief and did not add any meaningfully new arguments. *See* ECF Nos. 118, 120.

law, and can neither confer a right or immunity nor operate to supersede any existing valid law."); *see also Harper v. Va. Dep't of Tax'n*, 509 U.S. 86, 97 (1993) (confirming that when the Court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the Court's] announcement of the rule").

*AAPC*'s holding that the government-debt exception was unconstitutional and thus "as inoperative as if it had never been passed," *Hackett*, 228 U.S. at 566, means that the exception was always invalid and was therefore "powerless to work any change in the existing statute," even for a period of time, *Frost*, 278 U.S. at 526-27. The Court's holding that the exception was severable from the remainder of the statute likewise "is a question of interpretation and of legislative intent." *Dorchy v. Kansas*, 264 U.S. 286, 290 (1924). The *AAPC* plurality explained that the Communications Act's severability clause "squarely covers the unconstitutional government-debt exception and requires that we sever it," 140 S. Ct. at 2352, and observed that "the remainder of the robocall restriction did function independently and fully operate as a law for 20-plus years before the government-debt exception was added in 2015," *id.* at 2353. *See also id.* at 2357 (Sotomayor, J.) (concurring in judgment); *id.* at 2363 (Breyer, J.) (concurring in judgment with respect to severability and dissenting in part).

In concluding that the exception was severable from the remainder of the statute, the Court said what the TCPA has always meant, not what it meant as of the date of the Court's decision. *See Rivers*, 511 U.S. at 312-13, 313 n.12. Accordingly, there was never a time when the exception was invalid but not severed; by operation of law, the exception has been both invalid and severed since the date of its enactment, and Defendants may be held liable under the valid remainder of the statute. *Cf. United States v. Miselis*, 972 F.3d 518, 547 (4th Cir. 2020) (holding that defendants could be convicted for violating portions of the Anti-Riot Act that the court held were valid and severable from provisions found to violate the First Amendment).

**B. Defendants' Countervailing Arguments Are Meritless**

Although Defendants raise several arguments in an attempt to avoid liability, they do not provide a basis for this Court to depart from the traditional understanding of severance principles.

**1.** Defendants argue that the Supreme Court in *AAPC* struck down the government-debt exception "on a prospective basis only," Def. Br. at 2, and that the robocall restriction therefore was affected – and invalidated by – the government-debt exception until the exception's severance in *AAPC*, *see id.* at 5-6. But this contention disregards *AAPC*'s conclusion that the government-debt exception did not render "the entire 1991 robocall restriction unconstitutional," 140 S. Ct. at 2349 (plurality op.); *see id.* at 2362 (Breyer, J.) (concurring in judgment in part and dissenting in part) (agreeing that "the government-debt exception provides no basis for undermining the general cell phone robocall restriction"), and the plurality's admonishment that its opinion "does not negate the liability of parties who made robocalls" prior to the Court's decision, *id.* at 2355 n.12.

Thus, while Defendants correctly note that unconstitutional laws are void, *see* Def. Br. at 5, 9, Defendants incorrectly seek to apply that principle to the overall robocall restriction (which was constitutional when enacted) rather than the government-debt exception. For example, Defendants assert that "the unconstitutional iteration of § 227(b)(1)(A)(iii) was unconstitutional when enacted, violated the First Amendment each day it was 'on the books,' and cannot be enforced." Def. Reply at 7. But the *AAPC* Court made clear that the statute's only constitutional defect stemmed from the government-debt exception, *see, e.g.*, 140 S. Ct. at 2352 ("Enacted in 2015, the government-debt exception added an unconstitutional discriminatory exception to the robocall restriction."); *id.* at 2353 (describing the government-debt exception as "the constitutionally offending provision"), and that the underlying robocall restriction *was* constitutional, *see id.* Accordingly, it is only the government-debt exception that should be deemed ineffective from its enactment, meaning that this amendment had no effect on the already-existing and constitutional robocall restriction. *See supra.* This

result is also faithful to the *AAPC* plurality's admonition that litigants should not be able to under-mine an entire regulatory scheme merely because one of its marginal provisions is unconstitutional. *See AAPC*, 140 S. Ct. at 2351 (plurality op.) ("Constitutional litigation is not a game of gotcha against Congress, where litigants can ride a discrete constitutional flaw in a statute to take down the whole, otherwise constitutional statute.").[5]

Moreover, to hold otherwise would lead to substantial logistical difficulties. Before the Supreme Court decided *AAPC*, two circuits had struck down the government-debt exception but held it severable from the remainder of the statutory scheme. *See Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019); *AAPC v. FCC*, 923 F.3d 159 (4th Cir. 2019). Presumably, under Defendants' theory, a defendant would therefore be liable for violating the robocall restriction for calls made within the Fourth and Ninth Circuits following those appellate decisions but not for violations of the statute in other circuits until after the Supreme Court decided *AAPC*, notwithstanding the interstate nature of the regulated activity. That result underscores the problems inherent in Defendants' position.

**2.** Defendants ask the Court to ignore the *AAPC* plurality's statement that the decision "does not negate the liability of parties who made robocalls" prior to the Court's decision, 140 S. Ct. at 2355 n.12, arguing that this statement is non-binding dicta. *See* Def. Br. at 9-10. Although it is true

---

[5] Defendants cite a Federal Circuit opinion concurring in the denial of rehearing en banc in a case, for the proposition that "severance is a *prospective* remedy only." Def. Reply at 2 (citing *Arthrex, Inc. v. Smith & Nephew, Inc.*, 953 F.3d 760, 768 (Fed. Cir.), *cert. granted sub nom. United States v. Arthrex, Inc.*, 141 S. Ct. 549 (2020)); *see also* Def. Reply at 8. The *Arthrex* concurrence of course cannot displace Supreme Court precedent holding that the Court's construction of a statute does not "change" the law, *see Rivers*, 511 U.S. at 312-13, 313 n.12, or that the Court's interpretation of a law must be given retroactive effect in all pending cases, *see Harper*, 509 U.S. at 97. In any event, *Arthrex* is inapposite as it concerns the relief warranted when a party challenges an agency decision issued by improperly appointed officers. There is no analogous agency decision in this case, in which the only question is whether Defendants can be liable for allegedly violating a statutory provision that was valid when enacted. The same is true with respect to Defendants' brief discussion of *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020). *See* Def. Reply at 14. In addition, *Seila Law* was issued just days before *AAPC*, and indeed was cited multiple times in *AAPC*, *see, e.g.*, 140 S. Ct. at 2349, and yet the *AAPC* plurality explicitly stated that the severance of the government-debt exception "does not negate the liability of parties who made robocalls" prior to the Court's decision, 140 S. Ct. at 2355 n.12.

that this footnote appeared in an opinion signed by only three Justices, neither of the opinions expressly concurring with respect to severability disagreed with the footnote's conclusion that robocallers who violated the clearly constitutional robocall restriction during the relevant time period should still be liable for those violations. *See AAPC*, 140 S. Ct. at 2357 (Sotomayor, J.) (concurring in judgment); *id.* at 2363 (Breyer, J., concurring in judgment with respect to severability and dissenting in part). And as explained above, allowing liability for entities like Defendants would be consistent with the Supreme Court's treatment of similar instances in which the Court upheld liability for violations of an underlying, lawful provision even after an unconstitutional amendment has later been enacted. *See Eberle*, 232 U.S. at 705; *Jackson*, 390 U.S. at 591.

**3.** Defendants assert that to hold them liable for violations of the robocall restriction would be equivalent to applying the TCPA "retroactively." Def. Reply at 7. But there is nothing "retroactive" about holding Defendants liable for illegal robocalls. Any liability imposed on Defendants would stem from violations of the robocall restriction, which as discussed, was fully constitutional and operative at all relevant times. Moreover, Defendants cannot claim that their activities were prejudiced in any way. The robocall restriction was passed approximately thirty years ago and has applied to entities like Defendants since its enactment. Defendants cannot complain that they were unaware of the TCPA's prohibitions at the time they undertook the actions that are the subject of the present complaint.

Nor is it unfair for the Supreme Court plurality to recognize that debt collectors should not be held liable for calls made to collect government debt prior to *AAPC*, while at the same time upholding liability for other robocallers during that time period. 140 S. Ct. at 2355 n.12. Defendants suggest doing so "would be tantamount to an endorsement of the content-based discrimination that the Supreme Court found to be improper." Def. Br. at 9; *see also* Def. Reply at 2-4. That is incorrect. Holding debt collectors liable for calls made after the passage of the amendment but prior to the Court's decision in *AAPC* would likely implicate the "fundamental principle . . . that laws which

regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012); *cf.* Model Penal Code § 2.04(3)(b)(i) (providing a defense to criminal liability when a defendant "acts in reasonable reliance upon an official statement of the law, afterward determined to be invalid or erroneous, contained in . . . a statute or other enactment"). Thus, even though the government-debt exception was invalid from its inception and never had effect, it does not follow that debt collectors should be penalized for reasonably relying on its enactment. Any differential treatment between debt collectors and other robocallers would not be based on preferential treatment of favored speech, but rather would follow from the fact that certain callers had fair notice of potential liability while others did not. That distinction is undisputedly content neutral.

**4.** Defendants cite *Grayned v. City of Rockford*, 408 U.S. 104 (1972), for the proposition that "the relevant inquiry is whether the offending speech restriction was constitutional at the time of the alleged violation, not after the constitutional infirmities have been remedied." Def. Br. at 8. But the situation in *Grayned* is distinguishable from the circumstances here. In *Grayned*, the petitioner had been convicted of violating a content-based, anti-picketing ordinance. Following his conviction, the ordinance was amended to omit the exception that had rendered the law content-based. In a footnote, the *Grayned* Court noted that the amendment "has, of course, no effect" on the validity of the petitioner's conviction because the Court "must consider the facial constitutionality of the ordinance in effect when appellant was arrested and convicted." 408 U.S. at 107 n.2.

Unlike in *AAPC*, the Court gave no indication in *Grayned* that the statute's content-based exception was severable from the remainder of the statute. There is no indication that the provision contained a severability clause like the one found in the Communications Act, and the Court noted no legislative history indicating that the legislature would have enacted the general prohibition on picketing without the offending exception. Accordingly, the anti-picketing provision as a whole was invalid as enacted, and the Court held that Grayned could not be convicted under that unconstitutional

provision.[6] By contrast, *AAPC* confirms that the robocall restriction was valid when enacted and that the government-debt exception was severable and did not undermine the validity of the restriction. 140 S. Ct. at 2349, 2353 (plurality op.). The situation here is thus much more similar to *Jackson* and *Eberle*, in which the Court upheld a finding of liability when the liability arose from violations of a statute that had been found constitutional but then subject to an unconstitutional amendment. *See Jackson*, 390 U.S. at 586, 591; *Eberle*, 232 U.S. at 705. *Grayned* did not involve that situation, and therefore provides no basis for allowing Defendants to avoid liability in these circumstances. *See also Miselis*, 972 F.3d at 547.

    5. Defendants offer several explanations as to why cases such as *Eberle* and *Frost* are distinguishable, *see* Def. Reply at 9-13, but none has merit. *First*, Defendants argue *Eberle* is distinguishable because the statutory amendment in that case was "void from the outset," which Defendants suggest was not the case in *AAPC*. Def. Reply at 10-11. But *whenever* a statutory amendment is deemed unconstitutional, then that amendment it is "'a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." *AAPC*, 140 S. Ct. at 2353 (plurality op.) (quoting *Frost.*, 278 U.S. at 526-27). Indeed, the *AAPC* plurality noted that "[t]he Court has long applied severability principles in cases like this one, where Congress added an unconstitutional amendment to a prior law," and went on to explain that "[i]n those cases, the Court has treated the original, pre-amendment statute as the 'valid expression of the legislative intent.'" *Id.* at 2353 (quoting *Frost*, 278 U.S. at 526-27). Defendants offer no plausible explanation as to how certain unconstitutional amendments could be "void from the outset" whereas other unconstitutional amendments somehow are not void until a later time. In an apparent effort to identify a distinction, Defendants suggest that the *AAPC* Court

---

[6] The *Grayned* Court struck down the ordinance at issue after noting that it was "identical" to a Chicago ordinance that had been invalidated the same day in *Police Department of Chicago v. Mosley*, 408 U.S. 92 (1972). *See Grayned*, 408 U.S. at 107. In contrast to *AAPC*, the *Mosley* Court held that the content-based exception called into doubt the validity of the *entire* restriction. 408 U.S. at 100 ("If peaceful labor picketing is permitted, there is no justification for prohibiting all nonlabor picketing, both peaceful and nonpeaceful.").

could not have intended that the government-debt exception was void upon enactment because that would mean (according to Defendants) that debt collectors could be liable for calls made to collect government debt between the enactment of the government-debt exception and the Supreme Court's later severance of the exception. Def. Reply at 11. But that assumption is based on a mistaken premise. As discussed above, collectors of government debt could likely avoid liability for such calls not because of the government-debt exception but because imposing liability in these circumstances would offend principles of due process.[7]

*Second*, Defendants try to distinguish *Eberle* by contending that the constitutional question in that case was decided by the Michigan Supreme Court, and that "the [U.S.] Supreme Court did not decide whether the underlying law was unconstitutional." Def. Reply at 11. But the U.S. Supreme Court in *Eberle* did consider and reject at least some of the defendants' constitutional arguments against the original statute. 232 U.S. at 706-07. More fundamentally, the liability of the defendants in *Eberle* in no way turned on *which* court had held the original statute was constitutional. The crucial fact remains that the U.S. Supreme Court recognized that the underlying statute was constitutional, that the legislature had purported to add unconstitutional (and therefore void) amendments, and that defendants therefore could be liable for violating the original statute. *Id.* at 704-06. The same result should follow here.

*Third*, Defendants note that *Eberle* did not involve a First Amendment challenge. Def. Reply at 12. But aside from vaguely asserting that "First Amendment cases involve unique concerns and require a unique analysis" and that "*Eberle* did not address the special federal constitutional concerns regarding viewpoint and content discrimination," *id.*, Defendants offer no reason why this distinction makes any difference. The question here concerns how a constitutional statute is affected by a later,

---

[7] One court has concluded that the TCPA can be applied to entities like Defendants and *also* to debt collectors making calls to collect government debt before *AAPC* was decided. *Franklin*, 2021 WL 1535575, at *1. For the reasons set forth herein, the first conclusion is correct and the second is likely incorrect.

unconstitutional amendment. Cases like *Eberle*, *Frost*, and *Jackson* all indicate that the original statute is unaffected by the unconstitutional amendment, and none of these authorities indicate that conclusion would change if the amendment had been struck down under the First Amendment instead of some other constitutional provision.

*Fourth*, Defendants suggest that *AAPC* cited *Eberle* only to support the proposition that a court can strike down a specific provision instead of an entire statute. Def. Reply at 12. The Court, of course, could have cited *any* severability precedent to support that point. And the fact remains that in *Eberle* the Court upheld liability for conduct that violated an underlying statute, even though an unconstitutional amendment had been enacted prior to the defendant's conduct.[8]

6. Defendants argue that if they can be liable for calls made before the government-debt exception was held unconstitutional and severable in *AAPC*, then that would "open the door to legislative misconduct," such as by allowing Congress to "prohibit the use of the airways for all political speech, then later enact an exception for political ads for Democratic candidates," which would (according to Defendants) allow Democrats but not Republicans to run political advertisements for a period of time. Def. Reply at 2 & n.1. Defendants identify no such provision that has ever been enacted, and Defendants' speculation provides no reason for this Court to ignore the *AAPC* plurality's clear statement that robocallers may be liable for calls made before the government-debt exception's severance, or the substantial precedent supporting that conclusion.

## CONCLUSION

For the foregoing reasons, Defendants' constitutional challenge should be rejected.

---

[8] Defendants do not attempt to distinguish *Frost* except to assert that *AAPC* only relied on that decision "to confirm the severability of the statute, not to pretend that the unconstitutional amendment had never been added." Def. Reply at 13. But regardless of Defendants' conjecture as to why the *AAPC* Court cited *Frost*, Defendants do not engage with the actual language of *Frost*, in which the Court stated that because an unconstitutional amendment "is a nullity and, therefore, powerless to work any change in the existing statute, that statute must stand as the only valid expression of the legislative intent." 278 U.S. at 526-27. That language comfortably fits the situation here and allows for liability to be imposed on entities like Defendants.

Respectfully submitted,

*Counsel for the United States*

BRIAN M. BOYNTON
Acting Assistant Attorney General

ERIC R. WOMACK
Assistant Director, Federal Programs Branch

JOSHUA C. ABBUHL
(D.C. Bar No. 1044782)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 616-8366
Facsimile: (202) 616-8470
joshua.abbuhl@usdoj.gov

M. RHETT DEHART
ACTING UNITED STATES ATTORNEY
District of South Carolina

*s/Robert M. Sneed*
Robert M. Sneed (#07437)
Assistant United States Attorney
55 Beattie Place, Suite 700
Greenville, SC 292601
Telephone: (864) 282-2100
Facsimile: (864) 233-3159
E-mail: robert.sneed@usdoj.gov

DATED: May 14, 2021

## CERTIFICATE OF SERVICE

I certify that on May 14, 2021, I electronically filed the foregoing **UNITED STATES OF AMERICA'S BRIEF IN DEFENSE OF THE CONSTITUTIONALITY OF THE TELEPHONE CONSUMER PROTECTION ACT OF 1991** with the Clerk of Court using the CM/ECF system. A true and correct copy of the foregoing was served by operation of the CM/ECF system on the date indicated below, on all counsel or parties of record:

David Maxfield @ Dave@consumerlawsc.com (Attorney for Plaintiff)

Anthony Paronich @ Anthony@paronichlaw.com (Attorney for Plaintiff)

Brian Murphy @ Murphy@mmmb.com (Attorney for Plaintiff)

Jonathan Misny @ Misny@mmmb.com (Attorney for Plaintiff)

Christopher Boguski @ Cboguski@robinsongray.com (Attorney for One Life America)

Joseph Watson @ Cwatson@robinsongray.com (Attorney for One Life America)

Bernard Garner @ Allen@allengarnerlaw.com (Attorney for One Life America)

Chadwick Devlin @ Chadwick.Devlin@nelsonmullins.com (Attorney for IOF)

Don Krisinik, III @ Larry.Kristinik@nelsonmullins.com (Attorney for IOF)

Edward Fadel @ Efadel@flannerygeorgalis.com (Attorney for Mark Adams)

John Tamasitis @ Johntamasitis@parkerpoe.com (Attorney for Mark Adams)

David Brown, Sr. @ Dbrown@flannerygeorgalis.com (Attorney for Mark Adams)

Lawrence Hershon @ Lawrencehershon@parkerpoe.com (Attorney for Mark Adams)

Larry Plumblee @ Lplumblee@eppesandplumblee.com (Atty. for Niche Market Insurers)

Brace Plumblee @ Bplumblee@eppesandplumblee.com (Atty. For Niche Market Insurers)

s/Robert Sneed
Robert Sneed
Assistant United States Attorney