IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| James Van Connor, individually and on behalf of a class of all persons and entities similarly situated, | ) ) ) ) C/A No. 6:19-cv-03283-DCC |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| One Life America, Inc.; Independent Order of Foresters; Mark Adams; and Niche Market Insurers Agency, Inc., | ) ) **OPINION AND ORDER** ) ) ) |
| Defendants. | ) ) |

This matter is before the Court on the three Motions to Dismiss filed by Defendants Independent Order of Foresters, One Life America, Inc., and Mark Adams (collectively, "the moving Defendants"). ECF Nos. 104, 106, 109. For the reasons that follow, the Motions are denied.

## **BACKGROUND**

Plaintiff brings this action pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, which makes it unlawful for any person to make automated, artificial or prerecorded calls ("robocalls") to cell phones or residential phone lines. *Id*. §§ 227(b)(1)(A)(iii), 227(b)(1)(B). Plaintiff alleges that on July 23, 2019, Defendant Mark Adams called his cell phone with a pre-recorded message regarding Defendant Independent Order of Foresters' ("Foresters") insurance services. ECF No. 41 ¶¶ 28–37. Plaintiff further alleges that Defendant Foresters contracted with Defendant One Life America, Inc. ("One Life") to sell insurance on its behalf; that One Life partnered with

1

Defendant Niche Market Insurers Agency, Inc. ("Niche Market") to carry out its arrangement with Foresters; and that Niche did so by using Defendant Adams to make pre-recorded phone calls.  *Id*. ¶¶ 15–16, 47–57.

Defendants Foresters, One Life, and Adams have filed substantively similar Motions to Dismiss on the basis that the robocall restriction, § 227(b)(1)(A), was unconstitutional and therefore invalid during the relevant time period.  ECF Nos. 104, 106, 109.  Plaintiff Van Connor ("Plaintiff") filed responses in opposition, and the moving Defendants filed replies.  ECF Nos. 108, 112, 117, 118, 120.  Pursuant to Federal Rule of Civil Procedure 5.1(c), the United States of America intervened and filed a brief in defense of the constitutionality of the challenged statute.  ECF Nos. 140.  The moving Defendants filed further replies.  ECF Nos. 154, 155, 156.  Defendants' Motions are now before the Court.

## **APPLICABLE LAW**

### *Motion to Dismiss for Lack of Subject Matter Jurisdiction*

A party may move for dismissal based on lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  A defendant may challenge subject matter jurisdiction in one of two ways: (1) a facial attack, which asserts that the complaint "fails to allege sufficient facts to support subject matter jurisdiction," or (2) a factual attack, which "challenges the veracity of the facts underpinning subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192–93 (4th Cir. 2009).  Where, as here, the defendant challenges jurisdiction based on the facts alleged in the complaint, the court "must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged." *Id*. at 193.

*Motion for Judgment on the Pleadings*

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "[A] motion for judgment on the pleadings is decided under the same standard as a motion to dismiss under Rule 12(b)(6)." *Deutsche Bank Nat'l Trust Co. v. IRS*, 361 F. App'x. 527, 529 (4th Cir. 2010) (citing *Independence News, Inc. v. City of Charlotte*, 568 F.3d 148, 154 (4th Cir. 2009)). The key difference between a Rule 12(b)(6) motion and a Rule 12(c) motion is that on a 12(c) motion, the court "consider[s] the answer as well as the complaint" and "documents incorporated by reference in the pleadings." *Fitchett v. Cty. of Horry, S.C.*, C/A No. 4:10-cv-1648-TLW-TER, 2011 WL 4435756, at *3 (D.S.C. Aug. 10, 2011) (citations omitted).

Under the Rule 12(b)(6) standard, the court is obligated "to assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). To survive the motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While the Court must accept the facts in the light most favorable to the nonmoving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id*.

## DISCUSSION

I. *The Supreme Court's Holding in* **AAPC**

The TCPA, as originally enacted in 1991, "prohibited 'any call (other than a call made for emergency purposes or made with the prior express consent of the called party)

3

using any automatic telephone dialing system or an artificial or prerecorded voice' to 'any telephone number assigned to a . . . cellular telephone service[.]'" *Barr v. American Association of Political Consultants, Inc.* ("*AAPC*"), 140 S. Ct. 2335, 2344 (2020). It was amended in 2015 to exclude from the general restriction calls "made solely to collect a debt owed to or guaranteed by the United States." Bipartisan Budget Act of 2015, Pub. L. 114-74, 129 Stat. 588.

On July 6, 2020, the United States Supreme Court struck down the 2015 government-debt exception as unconstitutional and severed it from the remainder of the TCPA. *AAPC*, 140 S. Ct. at 2344. Justice Kavanaugh, joined by Chief Justice Roberts and Justice Alito, delivered the plurality opinion of the Court. In total, six Justices concurred in the finding that the government-debt exception violated the First Amendment by impermissibly favoring debt-collection speech over political and other speech. *Id*. at 2343. Seven Justices agreed that the 2015 government-debt exception was severable and that the entire 1991 robocall restriction should not be invalidated. *Id*.

## II.     The Parties' Positions

All parties to the present Motions agree that the TCPA was constitutional and effective prior to the 2015 amendment. They further agree that, from the date of the Supreme Court's ruling onward, robocallers are clearly liable under the un-severed provisions of the TCPA. They disagree, however, about the effect of the *AAPC* ruling in the interim. The moving Defendants' position is that the entirety of § 227(b)(1)(A) was unconstitutional and invalid during the period between November 2, 2015 (when the amendment was enacted) and July 6, 2020 (when the Supreme Court announced its

4

decision that the amendment was severable). Conversely, Plaintiff and Intervenor United States assert that the government-debt exception was simply void *ab initio* and that the unamended version of the statute remained continuously valid and in force. Under their view, robocallers who were not collecting government debt[1] remain liable for their prohibited actions from 2015 through 2020.

Because the single alleged robocall in this case was placed on July 23, 2019, and Plaintiff's only claim is based on § 227(b)(1)(A), the survival of the action in its entirety depends on the resolution of this question.

### III.  *Retroactive Effect of Severing the Government-Debt Exception*

As an initial matter, the moving Defendants' position is explicitly rejected by a footnote of the three-Justice plurality opinion in *AAPC*, which states:

> As the Government acknowledges, although our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate. On the other side of the ledger, *our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction*.

140 S. Ct. at 2355 n.12 (emphasis added). None of the additional four Justices who concurred in the severability holding addressed this point. And the notion that parties who made robocalls covered by the restriction are liable for their conduct between 2015

---

[1] There is some question about whether, under Plaintiff's preferred construction, government-debt collectors are liable for robocalls made between 2015 and 2020. *See* Section III, *infra*. Because Defendants were not attempting to collect government debt, that question is not presently before the Court.

5

and 2020, regardless of when the Supreme Court issued its ruling, is consistent with the principle that "an unconstitutional statutory amendment 'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." *Id*. at 2353 (citing *Frost v. Corp. Comm'n of Okla.*, 278 U.S. 515, 526–27 (1929)); *see also Rivers v. Roadway Express*, 511 U.S. 298, 313 n.12 (1994) (explaining that a Supreme Court decision does not change the meaning of a statute, but rather determines what it has "*always* meant"). It is also consistent with the general rule that parties may be liable for violating the unsevered portion of an unconstitutional statute, even if they did so prior to the date of judicial severance. *See United States v. Miselis*, 972 F.3d 518, 547–48 (4th Cir. 2020) (affirming defendants' convictions under the Anti-Riot Act after striking down other portions of the Act as unconstitutional).

However, as noted by Justice Gorsuch in his dissent and emphasized by the moving Defendants, the application of the above principle leads to an odd result: between 2015 and 2020, those who made robocalls to collect government debt are exempted from liability under the statute, while those who made robocalls for other purposes are not. On the face of it, at least, a holding to this effect "would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate." *AAPC*, 140 S. Ct. at 2366 (Gorsuch, J., dissenting) (internal citations omitted); *see also Trujillo v. Free Energy Sav. Co., LLC*, 2020 WL 8184336, at *3 (C.D. Cal. Dec. 21, 2020) ("The footnote presents a paradox."). And indeed, a minority of federal district courts have found that the government-debt exception and the unamended rule are "inextricably intertwined for the purposes of any reasonable analysis," such that it is unconstitutional to enforce the

6

unamended statute but not the exception during the interim period. *Creasy v. Charter Communs., Inc.*, 489 F. Supp. 499, 506 (E.D. La. 2020); *see also Cunningham v. Matrix Fin. Servs.*, ___ F. Supp. 3d ___, 2021 WL 1226618 (E.D. Tex. Mar. 31, 2021); *Lindenbaum v. Realgy*, 497 F. Supp. 3d 290, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020). These decisions, and the moving Defendants' arguments, raise difficult and compelling legal questions. Nevertheless, having considered the parties' briefing and the relevant law, the Court finds that the unamended TCPA remained effective against parties—like Defendants—who made covered robocalls between 2015 and 2020.

First, although the undersigned agrees that the on-point *AAPC* footnote is likely dictum, that dictum cannot be lightly dismissed. "[W]ith inferior courts, like ourselves . . . carefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative." *Mey v. Medguard Alert, Inc.*, 2021 WL 1652945, at *4 (N.D.W. Va. Apr. 27, 2021) (quoting *Wynne v. Town of Great Falls*, 376 F.3d 292, 298 n.3 (4th Cir. 2004)).[2] This is particularly so because, at least as to the final line, the reasoning of the footnote is logically consistent with the severability analysis that was essential to the holding. If the unconstitutional 2015 amendment was "'a nullity' and 'void' when enacted," *AAPC*, 140 S. Ct. at 2353 (citing *Frost*, 278 U.S. at 526–27), then it stands to reason that the robocall restrictions of the original statute remained in effect thereafter.

---

[2] *See also Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006) ("It would never occur to us to tell the Supreme Court that we would decide our cases based on our analysis of its decisions, not its own analysis of them if that analysis had been announced in a case where it was not essential to the result."); *United States v. Montero-Camargo*, 208 F.3d 1122, 1133 n.17 (9th Cir. 2000) ("Supreme Court dicta have a weight that is greater than ordinary judicial dicta as prophecy of what the court might hold; accordingly we do not blandly shrug them off because they were not a holding.").

The moving Defendants also urge that the footnote is contained in a plurality, rather than majority, opinion. But, as explained above, a total of four additional Justices concurred in the judgment with respect to severability and none indicated any disagreement with that aspect of the plurality's analysis. The Court therefore finds that footnote 12, though not strictly binding, is highly persuasive and instructive with respect to future rulings. With that said, the district court is not bound to follow its guidance if doing so would violate the Constitution or contravene the holding of *AAPC*.

But there is no constitutional infirmity in holding Defendants liable for the conduct alleged between 2015 and 2020. To begin with, Defendants' constitutional argument is premised not on the directly applicable line of footnote 12 ("our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction"), but on its interplay with an earlier statement that has no direct bearing on the present action ("no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception"). As another court remarked:

> [T]his Court need not—and does not—decide on this motion whether government-debt collectors are subject to liability for calls made between 2015 and 2020. Defendant is not a government-debt collector. The due process question properly should be resolved in a different case.

*Trujillo*, 2020 WL 8184336, at *4; *see also Miles v. Medicredit*, ___ F. Supp. 3d ___, 2021 WL 1060105, at *3 (E.D. Mo. Mar. 18, 2021) ("This Court need not address whether government debt collectors are subject to liability for calls made between 2015 and 2020. Medicredit is not a government-debt collector."). The question before the Court is whether

8

Defendants—who were not attempting to collect government debt—may be liable for their robocalls under a fully-constitutional, unamended TCPA. To hold them so is entirely consistent with the reasoning of *AAPC* (i.e., that the 2015 amendment was void *ab initio*) and the general rule with respect to severance.

In any case, even if the liability of government-debt collectors is properly considered in the present analysis, and even assuming that government-debt collectors are not liable for robocalls placed between 2015 and 2020,[3] the Court does not agree that the disparity in treatment would impose "the very same kind of content discrimination" that was rejected by a majority of Justices in *AAPC*. 140 S. Ct. at 2366 (Gorsuch, J., dissenting). Rather,

> to the extent Justice Kavanaugh proposed that government-debt collectors should not be retroactively liable, that principle would presumably be founded on concerns about fair notice and good-faith reliance on the TCPA's exception. It does not amount to a holding that their conduct was *actually* lawful during that time.

*Moody v. Synchrony Bank*, ___ F. Supp. 3d ___, 2021 WL 1153036, at * 6 (M.D. Ga. Mar. 26, 2021). To apply footnote 12 in its entirety would thus impose, not a content-based restriction on free speech, but a disparity in treatment based on the absence of fair notice

---

[3] At least one district court has found government-debt collectors liable despite the guidance of footnote 12. *See Franklin v. Navient, Inc.*, 2021 WL 1535575, at *2–3 (D. Del. Apr. 19, 2021) ("To follow the *AAPC* plurality, I would need to overhaul the law."). Another district court opined that the footnote "does not provide clear or binding guidance on the issue," but declined to decide the liability of government-debt collectors because it was not at issue. *Trujillo*, 2020 WL 8184336, at *5. Notably, neither court adopted the moving Defendants' preferred approach of absolving both kinds of robocallers from liability.

Because Defendants were not attempting to collect government debt, the undersigned follows the approach of the *Trujillo* court and declines to render any opinion on the liability of government-debt collectors.

9

to one category of defendants. This is a disparity different in kind and substance—if not in effect—from the one struck down in *AAPC*, and it does not mandate a contrary result to the one forecast in footnote 12.

Because the moving Defendants' arguments fall short of overcoming the highly persuasive on-point authority of the plurality's footnote, and because Plaintiff's position is consistent with the logic of *AAPC*'s majority holding and the law on severance, the Court finds that enforcement of the TCPA's robocall restriction against non-government-debt collectors between 2015 and 2020 does not violate the Constitution. In so finding, the Court joins with the vast majority of other federal district courts, both in this circuit and elsewhere, to have considered the issue.[4] Accordingly, Plaintiff has adequately established subject matter jurisdiction and his Complaint should not be dismissed on the pleadings.

---

[4] *See*, *e.g.*, *Lerner v. AmeriFinancial Sols., LLC*, 2021 WL 1785138 (D. Md. May 5, 2021); *Mey v. Medguard Alert, Inc.*, 2021 WL 1652945 (N.D.W. Va. Apr. 27, 2021); *Valdes v. Nationwide Real Estate Execs., Inc.*, 2021 WL 2134159 (C.D. Cal. Apr. 22, 2021); *Gunn v. Prospects DM, LLC*, 2021 WL 1534234 (E.D. Mo. Apr. 19, 2021); *Franklin v. Navient, Inc.*, 2021 WL 1535575 (D. Del. Apr. 19, 2021); *Hossfield v. Am. Fin. Sec. Life Ins. Co.*, ___ F. Supp. 3d ___, 2021 WL 1186526 (S.D. Fla. Mar. 29, 2021); *Moody v. Synchrony Bank*, ___ F. Supp. 3d ___, 2021 WL 1153036 (M.D. Ga. Mar. 26, 2021); *Whittaker v. WinRed Tech. Servs. LLC*, 2021 WL 1102297 (D. Ariz. Mar. 23, 2021); *Miles v. Medicredit*, ___ F. Supp. 3d ___, 2021 WL 1060105 (E.D. Mo. Mar. 18, 2021); *Massaro v. Beyond Meat, Inc.*, 2021 WL 948805 (S.D. Cal. Mar. 12, 2021); *DiStasio v. Edible Arrangements, LLC*, 2021 WL 1087499 (D. Conn. Feb. 1, 2021); *McCurley v. Royal Sea Cruises, Inc.*, 2021 WL 288164 (S.D. Cal. Jan. 28, 2021); *Less v. Quest Diagnostics Inc.*, ___ F. Supp. 3d ___, 2021 WL 266548 (N.D. Ohio Jan. 26, 2021); *Bonkuri v. Grand Caribbean Cruises, Inc.*, 2021 WL 612212 (S.D. Fla. Jan. 19, 2021); *Stoutt v. Travis Credit Union*, ___ F. Supp. 3d ___, 2021 WL 99636 (E.D. Cal. Jan. 12, 2021); *Rieker v. Nat'l Car Cure, LLC*, 2021 WL 210841 (N.D. Fla. Jan. 5, 2021); *Trujillo v. Free Energy Sav. Co., LLC*, 2020 WL 8184336 (C.D. Cal. Dec. 21, 2020); *Shen v. Tricolor California Auto Group, LLC*, 2020WL 7705888 (C.D. Cal. Dec. 17, 2020); *Abramson v. Fed. Ins. Co.*, 2020 WL 7318953 (M.D. Fla. Dec. 11, 2020).

## **CONCLUSION**

For the reasons set forth above, Defendants' Motions to Dismiss [104, 106, 109] are **DENIED**.

IT IS SO ORDERED.

                                                          **s/ Donald C. Coggins, Jr.**
                                                          United States District Judge

June 29, 2021
Spartanburg, South Carolina