IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| James Van Connor, individually and on behalf of a class of all persons and entities similarly situated, | ) ) ) ) | C/A No. 6:19-cv-03283-DCC |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| One Life America, Inc.; Independent Order of Foresters; Mark Adams; and Niche Market Insurers Agency, Inc., | ) ) ) ) | **OPINION AND ORDER** |
| Defendants. | ) ) | |

This matter is before the Court on Defendant Mark Adams' Rule 59(e) Motion for Reconsideration of Order Granting Plaintiff's Motion to Compel Discovery and Application to Stay Enforcement of That Order.  ECF No. 97.

## BACKGROUND

Plaintiff brings this putative class action pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, which makes it unlawful for any person to make automated, artificial, or prerecorded calls ("robocalls") to cell phones or residential phone lines.  *Id.* §§ 227(b)(1)(A)(iii), 227(b)(1)(B).  Plaintiff alleges, inter alia, that on July 23, 2019, Defendant Mark Adams called his cell phone with a pre-recorded message regarding Defendant Independent Order of Foresters' ("Foresters") insurance services.  ECF No. 41 ¶¶ 28–37.  The present discovery dispute arises out of a set of discovery requests sent from Plaintiff to Defendant Adams.  These requests, comprising sixteen interrogatories and eighteen requests for production, seek to elicit information about

1

Defendant Adams' telemarketing business practices, relationships and agreements with other Defendants and sub-vendors, telemarketing calls made to other individuals, and compliance with federal law. *See generally* ECF No. 81-1. In response to each request except for the first, ninth, and sixteenth interrogatories,[1] Defendant Adams asserted his Fifth Amendment right against self-incrimination. *See id.*

On October 2, 2020, the Court granted Plaintiff's Motion to Compel, finding that Defendant Adams had not established "a reasonable fear of a substantial and real threat of prosecution."[2] ECF No. 91 (quoting *Marchetti v. United States*, 390 U.S. 39, 53 (1968)). Defendant Adams now requests reconsideration on the basis that the Court made an error of law that would result in manifest injustice.

## APPLICABLE LAW

The Court first notes that although Defendant Adams brings his Motion pursuant to Rule 59(e), "Rule 59(e) is . . . applicable only to a final judgment." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991). Because the Order at issue was not accompanied by a final judgment and "adjudicate[d] fewer than all the claims . . . of fewer than all the parties," it is more properly reconsidered pursuant to Federal Rule of Civil Procedure 54(b) and "the Court's inherent power to reconsider and revise any interlocutory order." Fed. R. Civ. P. 54(b); *Regan v. City of Charleston*, C/A No. 2:13-cv-3046-PMD, 40 F. Supp. 3d 698, 701 (D.S.C. 2014) (citation omitted).

---

[1] Defendant Adams objected to Interrogatory Nos. 9 and 16 on separate, unrelated bases not presently before the Court. *See* ECF No. 81-1 at 5.

[2] This case was reassigned to the undersigned on February 16, 2021. ECF No. 122.

"[A] district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003). While it is "not necessary to label under a particular rule number a motion for reconsideration of an interlocutory order," *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1472 (4th Cir. 1991), courts in this district have considered such motions under Federal Rule of Civil Procedure 54(b), which recognizes the inherent power of the court to review interlocutory orders. *See Regan v. City of Charleston*, C/A No. 2:13-cv-3046-PMD, 40 F. Supp. 3d 698, 701 (D.S.C. 2014) (quoting *Jensen v. Conrad*, 570 F. Supp. 91, 103 (D.S.C. 1983)); *see also* Fed. R. Civ. P. 54(b) (permitting revision, at any time before the entry of a final judgment, of an order that adjudicates "fewer than all the claims or the rights and liabilities of fewer than all the parties").

The power to revise interlocutory orders "is committed to the discretion of the district court." *Am. Canoe*, 326 F.3d at 515. The Fourth Circuit has indicated that "review of an interlocutory order under Rule 54 is not subject to the restrictive standards of motions for reconsideration of final judgments under Rule 60." *Fayetteville*, 936 F.2d at 1472. In the absence of further guidance, "district courts in the Fourth Circuit generally look to Rule 59(e)'s standards" in evaluating a motion under Rule 54(b). *Regan*, 40 F. Supp. 3d at 701 (citing *Joe Hand Promotions, Inc. v. Double Down Entm't, LLC*, C/A No. 0:11-cv-02438-MBS, 2012 WL 6210334, at *2 (D.S.C. Dec. 13, 2012)); *see also Ruffin v. Entm't of E. Panhandle*, 2012 WL 1435674, at *3 (N.D.W. Va. Apr. 25, 2012)); *R.E. Goodson Const. Co., Inc. v. Int'l Paper Co.*, C/A No. 4:02-cv-4184-RBH, 2006 WL 1677136, at *1 (D.S.C. June 14, 2006). Therefore, an interlocutory order may be

amended pursuant to Rule 54(b) if necessary "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Zinkland v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007).

The Court notes that in light of the available Fourth Circuit precedent, the above standard may not encompass all circumstances in which the amendment of an interlocutory order is permissible.[3]  *See*, *e.g.*, *Am. Canoe*, 326 F.3d at 515 ("[A] district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment *when such is warranted*.") (emphasis added).  Nevertheless, a motion to reconsider "is not . . . an opportunity to relitigate issues already ruled upon simply because a party is dissatisfied with the outcome." *Regan*, 40 F. Supp. 3d at 702 (quoting *Joe Hand Promotions*, 2012 WL 6210334, at *2).

## DISCUSSION

### I.    *Threat of Prosecution*

Defendant Adams argues that reconsideration is warranted because the correct inquiry does not involve the likelihood of prosecution but merely its possibility.  Although the text of the TCPA imposes no criminal liability, Section 501 of the same chapter provides that any person who commits an act "in this chapter prohibited or declared to be unlawful" faces a fine of not more than $10,000 and/or imprisonment for a term not

---

[3] In *Fayetteville*, the Fourth Circuit declined to "thoroughly express [its] views on the interplay of Rules 60, 59, and 54." 936 F.2d at 1472.  Therefore, the exact relationship between these standards, particularly of Rules 54 and 59, is undefined.  Given the strong emphasis on the court's discretion expressed in *Fayetteville* and *American Canoe*, the district court may retain greater discretion in its application of Rule 54 than in its application of Rule 59.

exceeding one year.[4]  47 U.S.C. § 501.  Therefore, Defendant Adams may be subject to criminal prosecution for the conduct alleged in the Complaint.  *See Gould v. Farmers Ins. Exch.*, 2018 WL 4144773, at *2 (E.D. Mo. Aug. 30, 2018) (noting the criminal liability imposed by § 501 for acts made unlawful by the TCPA).

Plaintiff contends that Defendant Adams' motion should be denied because prosecution under § 501 for violations of the TCPA is, as a practical matter, exceedingly unlikely.  But the practical likelihood of criminal prosecution is not the applicable standard. Rather, the Fourth Circuit has instructed that

> once incriminating potential is found to exist, courts should not engage in raw speculation as to whether the government will actually prosecute, and should only pursue that inquiry when there are real questions concerning the government's ability to do so because of legal constraints such as statutes of limitation, double jeopardy, or immunity.

*United States v. Sharp*, 920 F.2d 1167, 1171 (4th Cir. 1990) (citing *United States v. Edgerton*, 734 F.2d 913, 921 (2d Cir. 1984); *In re Folding Carton Antitrust Litigation*, 609 F.2d 867, 872 (7th Cir. 1979)).  Plaintiff does not argue, and the Court does not find, that any such legal constraints apply in the present case.  The asserted unlikelihood of prosecution rests on nothing more than prosecutorial discretion.[5]  Therefore, to the extent

---

[4] For persons previously convicted of an offense punishable under the same section, the maximum term of imprisonment is increased to two years.  47 U.S.C. § 501.

[5] The "substantial and real" standard articulated in *Marchetti* applies to the threat of self-incrimination, not the likelihood of prosecution.  The question there was whether the defendants' registration and payment of a tax entailed a substantial risk of self-incrimination by "center[ing] attention upon the registrant as a gambler, and compel[ling] 'injurious disclosures' which may provide or assist in the collection of evidence admissible in a prosecution for past or present offenses."  390 U.S. 39, 52 (1968).  This is quite distinct from Plaintiff's argument that, even if Defendant Adams is criminally liable, the government is unlikely to prosecute.

that Defendant Adams' discovery responses might incriminate him in a future criminal action—even if the statutory provision imposing criminal liability is rarely enforced—he cannot be compelled to respond. The prior decision, insofar as it abridged that constitutional privilege, was an error of law resulting in manifest injustice, and the Court will reconsider the reasonableness of Defendant Adams' assertion of privilege with respect to individual discovery requests.

## II.    *Interrogatories*

First, Defendant Adams asserted his privilege against self-incrimination with respect to all but three of Plaintiff's First Set of Interrogatories. ECF No. 81-1 at 2–6.

The Self-Incrimination Clause of the Fifth Amendment states that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This privilege has been interpreted broadly to apply to statements in civil as well as criminal actions. Germane to the present issue, it is well-settled that the Fifth Amendment protects an individual from "filing responses to interrogatories in a civil action where the answers might incriminate him in future criminal actions." *North River Ins. Co. v. Stefanou*, 831 F.2d 484, 486–87 (4th Cir. 1987). Moreover, the privilege "encompasses compelled statements that lead to the discovery of incriminating evidence even though the statements themselves are not incriminating and are not introduced into evidence." *United States v. Hubbell*, 530 U.S. 27, 37 (2000). It may be asserted if the answer "would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Id.* at 38 (quoting *Hoffman v. United States*, 341 U.S. 479, 486 (1951)).

The Court has no difficulty determining that Defendant Adams' interrogatory responses would be testimonial in nature. *See Doe v. United States*, 487 U.S. 201, 213 (1988) ("There are very few instances in which a verbal statement, either oral or written, will not convey information or assert facts."). Therefore, application of the privilege turns on whether his responses would be incriminating. *See Fisher v. United States*, 425 U.S. 391, 410 (1976) (the court must determine whether a statement is "both 'testimonial' and 'incriminating' for purposes of applying the Fifth Amendment"); *Doe*, 487 U.S. at 207–08.

"To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman*, 341 U.S. at 486–87. However, "[w]hen the danger is not readily apparent from the implications of the question asked or the circumstances surrounding the inquiry, the burden of establishing its existence rests on the person claiming the privilege." *Estate of Fisher v. Comm'r*, 905 F.2d 645, 649 (2d Cir. 1990) (citing *In re Morganroth*, 718 F.2d 161, 167 (6th Cir. 1983); *United States v. Field*, 532 F.2d 404 (5th Cir. 1976), *cert. denied*, 429 U.S. 940 (1976)).

Telemarketing is a legitimate business in the United States. The TCPA does not make telemarketing itself illegal, much less criminal, but rather only imposes liability, civil or criminal, for certain specific conduct. Accordingly, discovery requests targeted at general information regarding Defendant Adams' involvement in the telemarketing

business and his business partners should not implicate his Fifth Amendment privilege.[6] Applying this analysis to the interrogatories at issue, the Court finds that the privilege does not appear to apply as to Interrogatory Nos. 2, 4, 11, 12, 13, 14, and 15. However, inquiries as to the particular contact with the Plaintiff as well as the manner and means of such contacts appear on their face to implicate the privilege. Consequently, Interrogatory Nos. 3, 5, 6, 7, 8, and 10 are properly subject to the privilege.[7]

### III.    Requests for Production

Defendant Adams also asserted his privilege against self-incrimination with respect to each of Plaintiff's First Set of Requests for Production. In determining whether production of a document would violate the Fifth Amendment privilege, courts distinguish between the contents of the document and the act of production. "[A] person may not claim the Amendment's protections based upon the incrimination that may result from the contents or nature of the thing demanded." *United States v. Wujkowski*, 929 F.2d 981, 983 (4th Cir. 1991) (quoting *Baltimore City Dep't of Social Serv. v. Bouknight*, 493 U.S. 549, 555 (1990)). This is so because "when the government demands that an item be produced, the only thing compelled is the act of producing the item." *Id.* (quoting

---

[6] The Court's ruling is based upon the plain language of the interrogatories and its interpretation of the same. In the event that Defendant Adams asserts that any of the remaining interrogatories are privileged, nothing in this Order should be construed as limiting him from reasserting privilege and requesting *in camera* review as to any specific interrogatory and response.

[7] As to Interrogatory No. 3, the mere identity of the vendors is not privileged but is duplicative of Interrogatory No. 2. However, the Court finds that any identification or description of a vendor's "work" relates to manner and means and, therefore, necessarily implicates the privilege.

*Bouknight*, 493 U.S. at 554). Accordingly, "the contents of business records ordinarily are not privileged because they are created voluntarily and without compulsion." *Doe*, 465 U.S. at 608–09. The documents requested by Plaintiff's First Set of Requests for Production appear to be in the nature of business records and there is no contention that their creation was compelled or involuntary. The Court therefore finds that their contents are not privileged.

However, "[a]lthough the contents of a document may not be privileged, the act of producing the document may be." *Id.* at 612; *see also Hubbell*, 530 U.S. at 25 ("The 'compelled testimony' that is relevant in this case is not to be found in the contents of the documents produced . . . [i]t is, rather, the testimony inherent in the act of producing those documents."). In order to be testimonial, a communication "must itself, explicitly or implicitly, relate a factual assertion or disclose information." *Doe*, 487 U.S. at 209–10. This includes the factual assertion, implicit in the act of production, "that the papers existed, were in [the party's] possession or control, and were authentic." *Hubbell*, 530 U.S. at 36. In *Doe*, the Supreme Court affirmed the District Court's finding that:

> [E]nforcement of the subpoenas would compel [respondent] to admit that the records exist, that they are in his possession, and that they are authentic. These communications, if made under compulsion of a court decree, would violate [respondent's] Fifth Amendment rights[.]

*Id.* at 613 n.11. Likewise, the act of production may compel the producing party "to make extensive use of 'the contents of his own mind'" by identifying and assembling the responsive documents. *Id.* at 43 (citations omitted) (holding that in light of the subpoenas' broad scope, "the collection and production of the materials demanded was tantamount

to answering a series of interrogatories asking a witness to disclose the existence and location of particular documents fitting certain broad descriptions"). To the extent such testimonial acts are incriminating, they are protected by the Fifth Amendment privilege.

Based upon the legal reasoning outlined above, the Court finds that Defendant Adams' response to any of the Plaintiff's subject Requests for Production requires a testimonial act which implicates his privilege against self-incrimination. Accordingly, the privilege applies to all of the Requests. [8] That said, the Court notes that much of the information requested appears to be jointly held by one or more of the corporate co-Defendants from whom it could just as easily be discovered. *See Wujkowski*, 929 F.2d at 983–84 (explaining application of the privilege to corporate entities and their agents). This Court is confident that the extremely capable lawyers in this case can effect the discovery of necessary relevant documents to move this case forward without infringing upon Defendant Adams' constitutional rights.

## CONCLUSION

For the reasons set forth above, Defendant Mark Adams' Motion for Reconsideration [97] is **GRANTED IN PART** and **DENIED IN PART**.[9]

IT IS SO ORDERED.

---

[8] The Court notes, however, that "the 'prevailing view' is that 'the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Maryland v. Universal Elections, Inc.*, 862 F. Supp. 2d 457, 464 (D. Md. 2012) (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)) (finding a party's "refusal to answer basic questions about his knowledge corroborates the reasonable inference that he had knowledge of the relevant TCPA regulations").

[9] Defendant Adams' request for a stay pending resolution of the Motion for Reconsideration is, accordingly, moot.

s/ Donald C. Coggins, Jr.
United States District Judge

July 23, 2021
Spartanburg, South Carolina